IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:12-CV-1370 |
| v. | ) ) | COMPLAINT |
| | ) ) | JURY TRIAL DEMAND |
| CAMDEN PLACE HEALTH & REHAB, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Yvonne Quaynor ("Quaynor"), who was adversely affected by such practices. The Equal Employment Opportunity Commission (the "Commission") alleges that Camden Place Health & Rehab, LLC ("Defendant"), failed to provide Quaynor with a reasonable accommodation for her disability, and subsequently discharged her from her position as a Certified Nursing Assistant ("CNA") because of her disability, in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina, Greensboro Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, a North Carolina limited liability company, has continuously been doing business in the State of North Carolina and the City of Greensboro, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

2

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Quaynor filed a charge with the Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. From around January 2010 until around July 2010, Defendant engaged in unlawful employment practices at its Greensboro, North Carolina facility in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b), as follows:

(a) Quaynor has a physical impairment, asthma, which substantially limits her in the major life activity of breathing and/or the operation of her respiratory system.

(b) At all relevant times, Quaynor was qualified to perform the essential functions of her job as a CNA. She had been successfully performing the job at Defendant's facility for approximately four years prior to her discharge. As a CNA, Quaynor was responsible for helping residents with tasks like eating, bathing, dressing, using the bathroom, and walking and exercising. She was also responsible for changing catheters, taking blood and urine samples, and other traditional nursing functions.

(c) On or about January 2010, Defendant began requiring that all of its CNAs supervise residents while the residents smoked cigarettes during scheduled smoke breaks. This duty was to be rotated among the CNAs. Because of the number of CNAs on duty during a given shift, each CNA would have to supervise a smoke break once every four days at the most. During a smoke break, Quaynor was required to transport 10 to 12 residents to the designated smoking area and remain with the residents for the entire 30 minute smoke break in order to assist them with anything they might need. For example, Quaynor would have to light a resident's cigarette or place the cigarette in the resident's

mouth if the resident was unable to do so. Quaynor was also required to walk among the residents with a broom and dust pan in order to clean up cigarette butts and ashes.

(d) The cigarette smoke that Quaynor inhaled while supervising the smoke breaks aggravated her asthma. She frequently found herself gasping for breath and having difficulty breathing after a smoke break. She complained repeatedly to Defendant's officials about supervising the smoke breaks, explaining that doing so was aggravating her asthma. After one particularly severe asthma attack in the summer of 2010, Quaynor brought a note from her doctor to Defendant's officials stating that she was under medical care for asthma and that her condition could be aggravated by smoke inhalation. Quaynor asked to be excused from supervising the smoke breaks, but Defendant denied her request.

(e) On or about July 22, 2010, Quaynor suffered another severe asthma attack while supervising a smoke break. The next day, Quaynor told her supervisor that she could not supervise a smoke break that day because she was still recovering from her asthma attack. On July 26, 2010, Defendant discharged Quaynor for refusing to supervise the scheduled smoke breaks.

9. At all relevant times, Quaynor was a qualified individual with a disability within the meaning of the ADA. Defendant failed to provide Quaynor with a reasonable accommodation for her disability when it denied her request to be excused from supervising the smoking breaks, and Defendant ultimately discharged Quaynor because of her disability.

10. The effect of the practices complained of in paragraph 8 above has been to deprive Quaynor of equal employment opportunities and otherwise adversely affect her employment status because of her disability.

11. The unlawful employment practices complained of in paragraph 8 above were intentional.

12. The unlawful employment practices complained of in paragraph 8 above were done with malice or with reckless indifference to the federally protected rights of Quaynor.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from discriminating against individuals because their disabilities, including discrimination in hiring, firing, and any other employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled persons, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Quaynor whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu thereof.

D. Order Defendant to make Quaynor whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 8 above, in amounts to be determined at trial.

E. Order Defendant to make Quaynor whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of in paragraph 8 above, including emotional pain, suffering, inconvenience, humiliation, loss of

enjoyment of life, loss of civil rights, and other non-pecuniary losses, in amounts to be determined at trial.

F. Order Defendant to pay Quaynor punitive damages for its malicious and reckless conduct described in paragraph 8 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this the 27th day of December, 2012.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, DC 20507

TINA BURNSIDE
Supervisory Trial Attorney

/s/ Lynette A. Barnes
LYNETTE A. BARNES
Regional Attorney
Charlotte District Office
129 W. Trade Street, Suite 400

6

Charlotte, N.C. 28202

/s/ Katherine A. Zimmerman
KATHERINE A. ZIMMERMAN
NC Bar No. 36393
Trial Attorney
Raleigh Area Office
1309 Annapolis Drive
Raleigh, NC 27608
Phone: (919) 856-4148
Fax: (919) 856-4156
katherine.zimmerman@eeoc.gov

ATTORNEYS FOR PLAINTIFF